(571 P.2d 48)
No. 48,522

RUTH LOREEN SCHEULER, *et al.,* CONSERVATOR OF ELIZABETH C. UTTER, and RUTH LOREEN SCHEULER, ADMINISTRATRIX OF THE ESTATE OF GEORGE W. UTTER, DECEASED, *Appellees, Cross-Appellants,* v. AAMCO TRANSMISSIONS, INC., *Appellant, Cross-Appellee.*

Opinion filed August 5, 1977.

*John J. Alder,* of Alder & Zemites, of Overland Park, for appellant and cross-appellee.

*Glenn McCann,* of Knipmeyer, McCann, Fish & Smith, of Kansas City, Mo., and *Hylton Harman,* of Kansas City, for appellees and cross-appellants.

Before PARKS, P.J., FOTH and REES, JJ.

REES, J.: This lawsuit involves two causes of action. Plaintiff, as conservator of her mother, asserted a wrongful death action by reason of the death of her father, George W. Utter. As administratrix of her father's estate, plaintiff also asserted a survival action for pain, suffering and medical and hospitalization expenses. K.S.A. 60-1801. Both causes of action arise out of fatal injuries sustained by George W. Utter when he was run over by his own car. The case was tried to a jury which returned verdicts against the defendant, $25,000 on the wrongful death claim and $11 on the survival claim. After allowing credit as discussed later in this opinion, judgment for $24,000 was entered in the wrongful death claim and no dollar judgment was entered on the survival claim. Defendant appeals contending it is not liable. Plaintiff cross-appeals from denial of a new trial on the amount of damages on the survival claim.

On May 9, 1966, Utter took his 1962 Mercury automobile to a local Aamco franchisee, Three B's, a Kansas corporation. By a written franchise agreement, Three B's was licensed by Aamco to do business as "Aamco Transmissions." The franchisee's name was not publicly displayed at its place of business. The only

name on the sign outside was "Aamco Transmissions." Utter ordered installation of an "Aamco Custom Rebuilt Transmission with Lifetime Guarantee." The transmission was installed and the car was delivered to Utter on May 10, along with an "Aamco Transmissions Service Guide" which included, among other things, the written Aamco Transmissions Lifetime Guarantee.

Trouble with the new transmission developed immediately. One of Utter's daughters drove the car and reported that when it was started the car "would automatically jump into reverse all by itself . . ." Utter took the car back to Three B's on May 14 for repair and the car was redelivered to Utter the same day, ostensibly cured of its problem. After returning home with the car, Utter told his wife he was going to do some work on it. With the car in his driveway, Utter started the engine, walked around to the front of the car and lifted the hood. As he was adjusting the carburetor, the car backed away from him down the driveway. A neighbor saw Utter walk along beside the car as it backed toward the street and saw him reach into the car in an apparent attempt to turn off the ignition. In trying to stop the car, Utter was knocked down and run over by the left front wheel. Mrs. Utter, inside the house, witnessed the accident and ran to her husband's side. The driverless automobile continued to run in reverse, made a complete circle and ran over both Mr. and Mrs. Utter. Finally, the neighbor was able to get inside the car and stop it by turning off the engine.

Mr. and Mrs. Utter were taken to a hospital. Mr. Utter died of his injuries on May 23. There was testimony that Mr. Utter was in great pain prior to his death. Several witnesses heard him say the automobile had been in park when he started it but it had jumped into reverse.

Plaintiff sued Aamco and Three B's. Prior to trial, a settlement was made with Three B's. In consideration of payment of $1,000, plaintiff, as conservator for her mother, covenanted not to sue Three B's for wrongful death. In consideration of payment of $14,000, plaintiff, as administratrix, covenanted not to sue Three B's on any other claim. Plaintiff expressly reserved the right to sue Aamco in either of her capacities. The action as to Three B's was dismissed with prejudice.

Trial against Aamco was upon the theories of breach of implied and express warranties. The jury returned its verdict for plaintiff. After some initial uncertainty, the district court reduced the

wrongful death recovery by $1,000 because of the Three B's settlement and disposed of the $11 verdict on the survival claim by crediting against it the $14,000 payment made by Three B's.

Now on appeal Aamco raises three arguments relating to warranty. It contends there was no substantial competent evidence that it expressly or impliedly warranted the quality or performance of the transmission installed in the Utter car. Aamco also argues that even if a warranty existed, there was no substantial competent evidence it was breached. Aamco's last contention is that there was no substantial competent evidence that a breach of warranty caused Utter's injury and death.

The Aamco Transmissions Lifetime Guarantee was supplied by Aamco to Three B's for issuance to purchasers. The text of the guarantee is as follows:

"All AAMCO Custom Rebuilt Transmissions and AAMCO Custom Exchange Torque Converters are guaranteed against any defects of material and workmanship for the lifetime of the car; providing: (1) that the ownership of the car remains the same, and (2) that it is delivered to any registered AAMCO Transmission Shop in the United States each year, including the current year, for service within 30 days of the Service Date indicated below. The charge for each service is $13.75, payable at the time of service, and it covers the replacement of transmission fluid and all preventive adjustments necessary to keep the transmission in good operating condition."

At the top of the guarantee the words "AAMCO TRANSMISSIONS" appear in bold type. Nowhere on the guarantee is Three B's name.

The Aamco Transmission Service Guide given Utter with the guarantee extolls the virtues of Aamco transmissions and the care and skill with which each transmission is installed and serviced. The service guide assures the purchaser of "prompt service in any of the hundreds of Aamco Transmission Centers coast-to-coast." It includes a picture of the Aamco national headquarters in Philadelphia. The service guide was given to the Three B's by Aamco for issuance to transmission buyers. Three B's name does not appear on it.

The order form for the purchase of an Aamco Custom Rebuilt Transmission with Lifetime Guarantee signed by Utter has the words "AAMCO TRANSMISSIONS" prominently printed thereon and there is no mention of Three B's, although the address of Three B's does appear.

There was considerable evidence concerning Aamco advertis-

ing. The franchise agreement between Aamco and Three B's required Three B's to use Aamco advertising materials and sales promotions and to contribute to national advertising by Aamco. Aamco sent Three B's mats for newspaper advertisements and tapes for radio spots. Three B's used the materials to run advertisements in local newspapers and on local radio stations. The advertisements praised Aamco Transmissions with their "Coast-to-Coast Ironclad Guarantee" without naming Three B's.

Under these circumstances, we hold there was substantial competent evidence that individually and directly Aamco expressly warranted the installation and performance of the transmission sold to Utter.

Advertising may be the basis of or form a part of an express warranty. 67 Am.Jur.2d, Sales §436 (p. 598); *General Motors Corporation v. Dobson,* 338 S.W.2d 655 (Tenn. 1960). Lack of privity between a buyer and a manufacturer who advertises is no hurdle. In a widely-known treatise, it is said:

"Manufacturers constantly extol and represent the quality of their products on labels, on billboards, on radio and T.V., in newspapers and magazines, in brochures made available to dealers who are expected to disseminate them to prospective purchasers, and so on. Should a lack of privity of contract bar recovery by a consumer, who in reliance on the manufacturer's advertising representations purchases and uses his product and suffers resultant harm? The answer, of course, seems obvious. While there are still some apparently die-hard courts, an increasing number of cases are holding or recognizing that under such circumstances a consumer can recover for breach of an express warranty despite a lack of privity." 2 Frumer and Friedman, Products Liability, § 16.04 [4] [a], p. 3-223.

Assuming the possible relevance of K.S.A. 84-2-313, we do not find it to inhibit our approval of the jury finding that an express warranty existed in this case. In the official U.C.C. comment to the statute, it is said:

"Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. . . ."

Aamco argues that it has no warranty liability for the transmission sold Utter because it was not the manufacturer and there was no evidence it contained Aamco parts. Aamco custom rebuilt transmissions of the type sold to Utter and the public are used

transmissions that are rebuilt with new parts by Aamco's franchisees. Aamco does not require its franchisees to buy all their stock of parts from Aamco. Therefore, Aamco reasons nothing ties it to any warranty, express or implied.

Even though we disagree with Aamco's argument that the record does not include evidence that Aamco parts were incorporated in the Aamco custom rebuilt transmission sold to Utter when it was rebuilt, we do find sufficient evidence that Aamco expressly warranted the performance of the installed transmission whether or not it contained Aamco parts.

Aamco maintains that even given the existence of a warranty, there was no evidence that such warranty was breached. Aamco argues that there was no evidence of a specific defect in the transmission or that any defect existed at the time the transmission or any of its incorporated parts left Aamco's control.

Aamco misinterprets the express warranty. In *Huebert v. Federal Pacific Electric Co., Inc.*, 208 Kan. 720, 494 P.2d 1210, the Kansas Supreme Court discussed the scope of express warranties by manufacturers as follows:

". . . A manufacturer may by express warranty assume responsibility in connection with its products which extends beyond liability for defects. All express warranties must be reasonably construed taking into consideration the nature of the product, the situation of the parties, and surrounding circumstances. However, defects in the product may be immaterial if the manufacturer warrants that a product will perform in a certain manner and the product fails to perform in that manner. Defects may be material in proving breach of an express warranty, but the approach to liability is the failure of the product to operate or perform in the manner warranted by the manufacturer." (p. 725.)

The Court quoted favorably from *Hansen v. Firestone Tire and Rubber Company*, 276 F.2d 254 (6th Cir. 1960), as follows:

" 'In an action of the present character, the burden of proof resting upon the plaintiff entails merely demonstration that the goods did not have the properties warranted. In the absence of controverting evidence adduced by the defendant, which convinces the jury that the goods were as warranted, plaintiff should prevail. *Hertzler v. Manshum*, 228 Mich. 416, 200 N.W. 155. The plaintiff is not required to show the technical causation of the goods' failure to match their warranty. Nor is it necessary that the manufacturer's negligence be shown as the cause of such failure.' " (p. 725.)

In the present case, Aamco warranted the performance of the Aamco custom rebuilt transmission. Plaintiff's burden was only to demonstrate that it did not perform in the manner warranted. Proof of a specific defect was not required.

Finally, Aamco argues that even if a warranty existed and the warranty was breached, it was not proved that the breach caused Utter's injuries and death. Aamco maintains the causal connection between breach and injury was severed by the independent work done by Three B's and the fact defective performance was discovered by Utter.

Again Aamco has placed an unduly restrictive interpretation upon the scope of liability under the express warranty. Aamco warranted both the performance of the transmission and the workmanship of its franchisee. The defense that Utter had unreasonably used the automobile with knowledge of its alleged harmful condition was rejected by the jury. Plaintiff established her right to recover when she showed to the jury's satisfaction the transmission did not perform as warranted.

Aamco's next area of contention relates to the covenant not to sue given by plaintiff to Three B's. Aamco argues that plaintiff's settlement with Three B's, implemented by the covenant not to sue, had the effect of release of Aamco from liability. We disagree.

Aamco relies on *Jacobson v. Parrill,* 186 Kan. 467, 351 P.2d 194, *Graham v. Barber,* 192 Kan. 554, 390 P.2d 23, and similar cases. Those cases stand for the proposition that where the liability of a master or principal is vicarious and based solely upon the action of his servant or agent, the exoneration of the servant or agent removes the foundation for imposition of liability upon the master or principal. Here Aamco's liability is not vicarious. It is direct. It arises out of Aamco's own personal warranty.

Aamco's final argument is that the full $15,000 paid by Three B's in settlement should be credited against the $25,000 wrongful death verdict. The problem with Aamco's argument is that plaintiff brought two separate and independent claims against both Three B's and Aamco. The settlement with Three B's of the wrongful death claim involved only $1,000. Aamco is entitled to only that amount as a credit against the wrongful death verdict.

The survival claim and the wrongful death claim are separate and distinct causes of action. *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, 552 P.2d 1363. Aamco is not entitled to have payment on one claim applied to the other.

By her cross-appeal, plaintiff contends it was error to deny her motion for new trial as to damages on the survival claim. She argues that the $11 verdict was inadequate as a matter of law. The

record includes conceded and undisputed evidence of substantial pain and suffering prior to Utter's death, as well as hospital and medical expenses in specific amounts that total in excess of $2,200.

There is no fixed standard or hard and fast rule for measuring the adequacy or inadequacy of a verdict in a personal injury action, and such determination depends upon the facts and circumstances of each particular case. *Lehar v. Rogers,* 208 Kan. 831, 494 P.2d 1124; *Hildebrand v. Mueller,* 202 Kan. 506, 449 P.2d 587. The necessity of a new trial because of inadequacy of the verdict is discussed in *Timmerman v. Schroeder,* 203 Kan. 397, 454 P.2d 522. In this case, the jury verdict, contrary to the court's instructions, did not afford recovery for undisputed proven loss. Plaintiff is entitled to a new trial limited to the amount of damages to which plaintiff is entitled on the survival claim.

The wrongful death judgment is affirmed. The survival claim judgment is affirmed as to liability and vacated as to damages. The case is remanded for new trial in accord with this opinion.