(634 P.2d 1142)

No. 52,126

Broce-O'Dell Concrete Products, Inc., *Appellant,* v. Mel Jarvis Construction Co., Inc., *Appellee.*

Opinion filed October 15, 1981.

*Terry J. Malone* and *B. G. Larson,* of Williams, Larson, Voss, Strobel & Estes, of Dodge City, for the appellant.

*Jack E. Dalton,* of Mangan, Dalton & Trenkle, of Dodge City, for the appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

FOTH, C.J.: The primary issue in this case is whether our comparative negligence statute is applicable in an action for consequential damages for breach of contract. We hold it is not.

The controversy arose out of the construction of eighteen concrete grain storage cylinders at a grain elevator at Howell, Kansas. In the fall of 1976 the elevator owner, Dodge City Cooperative Exchange, contracted with Farmland Industries of Kansas City, Missouri, to build the new facility. Farmland, as general contractor, hired the defendant, Mel Jarvis Construction Co., Inc., as construction contractor to do the actual building. Jarvis, in turn, contracted to acquire its concrete from plaintiff Broce-O'Dell Concrete Products, Inc.

Construction was by the "slip-form" method where concrete was poured into a form and, as the concrete hardened, the form was slipped up and fresh concrete poured into the form on top of the hardening concrete underneath. All eighteen cylinders were poured at once. Pouring began in the morning of January 24, 1977, and continued throughout the day, with temperatures just above freezing.

At the end of the day the pouring had reached six feet, with

thirty inches showing underneath the form. Inspection by Jarvis personnel that evening revealed sloughing of the visible concrete. Inspection of the Broce facility where the concrete was being prepared revealed what appeared to the Jarvis inspector to be two blatant defects: frozen aggregate in the mix, some in chunks as large as footballs; and inadequately heated water. (Jarvis also claimed later that insufficient cement was used, so that the concrete lacked strength.) Jarvis personnel worked with Broce personnel to remedy the perceived defects in the mixing process.

The next day Jarvis did no pouring while it made temporary repairs on the sloughing. It then decided to continue pouring to the 30-foot level, make a more detailed inspection, and then determine the feasibility of permanent repairs to the first six feet. However, after about 32 feet of the projected height of 130 feet had been reached the owner, Dodge City Co-op, indicated its dissatisfaction with the construction and the concept of repairing the first six feet.

Farmland and Jarvis then agreed that to satisfy their customer the entire 32 feet should be torn down and rebuilt. Farmland agreed to pay Jarvis $60,000 toward the estimated cost of $150,000, to be recouped by way of 40% of any net recovery Jarvis might effect from Broce, up to $150,000.

When Broce instituted this action for its unpaid concrete bill of $19,664.55, Jarvis counterclaimed for the actual cost of tearing down and rebuilding to the 30 foot level, in the amount of $157,279.93. By agreement of the parties the case was tried to a jury on the counterclaim alone. The jury returned a verdict for Jarvis in the amount of $52,426.64. Broce appeals.

The first and primary claim of error is the trial court's refusal to instruct the jury on comparative negligence under PIK Civ. 2d 20.01 and 20.02. Under Broce's theory, if 50% or more of Jarvis's damages were attributable to Jarvis, there could be no recovery. The court rejected this theory and instead the jury was instructed:

"If you find that Jarvis is entitled to recover damages for breach of implied warranty or express warranty, then in fixing the amount of damages you should not include any loss that he could have prevented by reasonable care and diligence or was caused by Farmland Industries."

The jury apparently took such instruction to heart because during deliberations it asked the court who had made the decision to proceed from six feet to 30 feet, and received a read-back

of the testimony recounting how Jarvis reached that decision. The verdict reached shortly thereafter was exactly one-third the uncontested cost to Jarvis. The ready inference is that the jury found Broce not responsible for the decision to go from six to thirty feet, and that the costs resulting from that decision should be borne by Jarvis. There is no claim that the amount of damages or the allocation of "fault" is not supported by the evidence.

We think the trial court was correct in rejecting comparative negligence. The case was tried as a breach of contract case, and the jury was instructed without objection that the claim was for breach of express warranty and implied warranty of fitness for a particular purpose. Damages were sought only for pure economic loss occasioned by the breach.

Our comparative negligence statute, K.S.A. 60-258a reads:

"(*a*) The contributory negligence of any party in a civil action shall not bar such party or said party's legal representative from recovering damages for negligence resulting *in death, personal injury or property damage,* if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made . . . ." Emphasis added.

The decisions construing our comparative negligence statute have a common thread running through them—all involved death, personal injury or property damage. No case applies the statute to purely economic loss resulting from a breach of contract.

Although Kansas interjects comparative negligence principles into areas which "previously were considered beyond the ordinary tort negligence situation" (*Kennedy v. City of Sawyer,* 228 Kan. 439, 452, 618 P.2d 788 [1980]), the court in *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 610 P.2d 1107 (1980), had qualified the application of the statute by stating:

"If contributory negligence or an analogous defense *would not* have been a defense to a claim, the comparative negligence statute does not apply; if contributory negligence *would* have been a defense, the statute is applicable." 227 Kan. at 845. Emphasis in original.

And see *Sandifer Motors, Inc. v. City of Roeland Park,* 6 Kan. App. 2d 308, 628 P.2d 239 (1981), *rev. denied* July 15, 1981. (Comparative negligence applies in nuisance case to the extent the nuisance is based on negligence, based on the availability of contributory negligence as a common law defense.)

It is well settled that contributory negligence is no defense to a

breach of contract. *Carter v. Hawaii Transportation Co.*, 201 F. Supp. 301 (D. Hawaii 1961); *Trinity Universal Insurance Co. v. Fuller*, 524 S.W.2d 335 (Tex. Civ. App. 1975); *Rotman v. Hirsch*, 199 N.W.2d 53 (Iowa 1972); 17A C.J.S., Contracts § 525(1), p. 1018.

Express warranties are contractual in nature, *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311, 521 P.2d 281 (1974); *Brunner v. Jensen*, 215 Kan. 416, 524 P.2d 1175 (1974). The manufacturer's negligence plays no role, *Cantrell v. R. D. Werner Co.*, 226 Kan. 681, 685, 602 P.2d 1326 (1979). All the plaintiff must show is a failure of performance *as warranted*—a specific defect need not be proved. *Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, Syl. ¶ 2, 571 P.2d 48 (1977). The court in *Huebert v. Federal Pacific Electric Co., Inc.*, 208 Kan. 720, 494 P.2d 1210 (1972) concluded in Syl. ¶ 2:

> *"Contributory negligence or assumption of risk as normally used are not defenses to an action based on breach of an express warranty;* however, an unreasonable use of a product after discovery of a defect and becoming aware of a danger is a defense." Emphasis added.

As to implied warranty, *Kennedy v. City of Sawyer*, 228 Kan. at 439, expressly held "the doctrine of comparative fault or comparative causation should be and is applicable to both strict liability claims and to those claims based on implied warranty in products liability cases." Concededly the fact a products liability case is based on implied warranty does not prevent the application of comparative fault principles. This, however, is not a products liability case: There is no claim of injury to person or property from a dangerous product, but only of economic loss through the furnishing of a defective product. Unless a breach of warranty, either express or implied, causes death, personal injury or physical damage to property, the comparative negligence statute does not apply. If the result is simple economic loss, liability and damages are governed by breach of contract principles.

Of course "fault" does play some part in contract actions in that it may bear on the broader question of damages. One who breaches a contract is liable for damages *caused by the breach;* he is not liable for damages flowing from other causes whether or not those other causes have the connotations of culpability associated with the term "fault." In this case it may be said that it was Jarvis's "fault" that 26 feet of good concrete were poured on top

of six feet of bad concrete, even though the decision to pour may have been entirely reasonable. However, the fact that more than half Jarvis's loss may have been attributable to its own decision should not and does not mean it may not recover that portion of its loss caused by Broce's breach of contract. The instructions given and verdict reached attained that result and cannot be disturbed.

Broce's second claim of error is that the trial court, when asked by the jury during deliberations about the cost of the concrete furnished, should have furnished the $19,664.55 figure agreed upon. Instead the court told the jurors it was not to enter into their considerations. Error cannot be predicated on this occurrence for at least two reasons: First, there was no objection to the court's response or any contrary suggestion offered—thus, the contemporaneous objection rule is applicable. Second, the parties had stipulated that the jury trial was to be on the counterclaim alone—Jarvis was cast in the role of plaintiff, Broce in that of defendant. The parties had stipulated the cost of concrete but that stipulation had not been submitted to the jury, presumable because neither party deemed it relevant to the issues of breach, damages and causation which the jury was to decide. We, also, cannot see how it was relevant to those issues. In addition, the court's treatment of the concrete cost question was fully in accord with the agreement of the parties. On post-trial motion the court concluded that Broce had been found in breach of its warranty and therefore could not recover for its nonconforming goods which were ultimately of no use to the buyer. No claim of error is made regarding this ruling.

Finally, Broce claims it should be allowed a pro tanto credit for a portion of the $60,000 paid to Jarvis by Farmland under their agreement to tear down the 32 feet and rebuild. The argument is that Jarvis has already recovered a large share of its damages from Farmland and should not be entitled to recover again from Broce.

This overlooks the fact the decision to tear down and rebuild cost Jarvis over $157,000. Even if it were not obligated to share the recovery against Broce with Farmland, but could keep the entire $52,000 plus Farmland's $60,000, Jarvis would still be out-of-pocket $45,000. As it is, after deducting litigation expenses 40% of this judgment must be paid to Farmland. We fail to see how Jarvis is recovering its damages twice.

Additionally, there is nothing to show Farmland paid the $60,000 to fulfill any legal or moral obligation, or that its purpose was to compensate Jarvis for damages caused by Broce. Farmland's motive, according to the only evidence presented, was simply to induce Jarvis to tear down and rebuild rather than repair, so as to satisfy the Dodge City Co-op. There was certainly no intent that Broce should benefit by the payment. We conclude there was no error in disallowing Broce's claim for a credit.

Affirmed.