(286 P.3d 1138)
No. 105,589

RAMA OPERATING COMPANY, INC., *Appellee*, v. DAVID A. BARKER, *Appellant*.

1021

1022

Opinion filed July 27, 2012.

*Joseph H. Cassell*, of Eron Law Office, P.A., of Wichita, for appellant.

*Timothy R. Keenan* and *Addie L. Baird*, of Keenan Law Firm, P.A., of Great Bend, for appellee.

Before GREENE, C.J., MALONE and ATCHESON, JJ.

GREENE, C.J.: David A. Barker, assignor of an oil and gas lease to RAMA Operating Company, Inc. (RAMA), appeals the district court's denial of his motion for summary judgment as well as the

judgment against him after bench trial for damages totaling $13,356.44 for breach of his covenant to warrant and defend title to the interest conveyed. Concluding RAMA failed to establish at summary judgment that there was a lawful adverse claim against the interest conveyed, there was no actionable breach of the covenant of warranty of title. Thus, we reverse and remand with directions to enter summary judgment in favor of Barker.

## FACTUAL AND PROCEDURAL BACKGROUND

Barker obtained an oil and gas lease from B.F. and Eleanor Babb on May 6, 1996, covering lots 1 and 2 that are the west half of the northwest quarter of Section 30, Township 21 South, Range 8 West, in Rice County. A previous lease of this tract (the Tyrell lease) had been unitized with other leases to form a 160-acre gas unit apparently known as the "Fitzgerald Gas Unit." The lessee of the Tyrell lease, Bear Petroleum, executed and there was recorded a release of its right, title, and interest in the Tyrell lease on October 3, 1996. A second release of its interest in the Tyrell lease was requested by Barker and executed by Bear Petroleum on March 1, 2001, and was subsequently recorded, but there is a dispute as to its validity.

Within the primary term of Barker's Babb lease and on May 6, 2001, Barker obtained an identical lease from the Babbs—except the primary term was specified as 2 years. Based on information in the record, this lease was recorded on February 7, 2001. Neither party to this litigation has noted, argued, or raised an issue in district court or on appeal surrounding the rather strange sequence of the second lease acquisition, the recordation thereof, and the assignment at issue.

After obtaining a supplemental drilling title opinion on the acreage, on April 9, 2001, Barker executed an assignment conveying to RAMA his right, title, and interest to this oil and gas lease. On that date, the records of the Kansas Corporation Commission and Rice County Assessor's Office show there had been no production by the only well on the Fitzgerald Gas Unit for at least 23 months. Although a contract between Barker and RAMA required only an

assignment "without warranty," the Barker assignment contained a covenant of warranty of title, which we quote later in this opinion.

In July 2001, when RAMA's drilling rig contractor appeared on the lease property to commence drilling operations, Robin Austin of RAMA became aware of potential adverse claims to the title through a landowner. He contacted both Barker and R.A. "Dick" Schremmer of Bear Petroleum, Inc., the operator and prior lessee of this acreage under the old Tyrell lease. Barker refused comment and claimed he told RAMA to contact his attorney, but Schremmer told RAMA that Bear Petroleum had a valid lease on "the property" and that a prior release of the oil and gas lease covering this acreage and executed by Schremmer was a mistake. Schremmer also told RAMA that he had instructed Barker not to record the mistaken release, but Barker claimed there was no fraudulent recordation.

Based on the information from Schremmer, RAMA terminated drilling operations and purportedly incurred damages "in the form of expenses in the commencement of drilling operations" totaling $13,356.44. Other facts embellished this story at time of trial, but our initial and determinative focus is on the summary judgment proceedings.

After RAMA filed its petition alleging breach of warranty of title, Barker sought summary judgment on the ground that RAMA caused its own damages when it precipitously terminated drilling operations although no lawful adverse claim was ever established to the oil and gas lease assigned to RAMA. The district court denied the motion because the court found there were two genuine issues of material fact preventing judgment as a matter of law: (1) whether Schremmer executed the release of his prior lease by mistake; and (2) exhibits purporting to show "differing amounts of production at different times" on a unit including the subject lease and another lease.

After a different district judge was assigned to the case, Barker's motion for reconsideration of his motion for summary judgment was denied, and the matter was set for bench trial. After trial, the court found that RAMA had sustained its burden to establish a breach of the covenant of warranty of title and awarded it damages in the amount claimed.

Barker appeals.

## STANDARDS OF REVIEW

Our standard of review for a district court's grant or denial of a motion for summary judgment is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

## DID THE COURT ERR IN DENYING BARKER'S MOTION FOR SUMMARY JUDGMENT?

On appeal, Barker initially argues that his motion for summary judgment should have been granted because the only *material* fact dispute was created by RAMA's false affidavit submitted in opposition to the motion. That affidavit attempted in conclusory fashion to dispute the production history provided in Barker's uncontroverted fact statements and served to create what the district court believed was a genuine issue of fact precluding summary judgment.

### *In Kansas, Breach of the Covenant of Warranty of Title Requires Evidence of a Lawful Adverse Claim*

Barker argues that the lack of a condition precedent—*i.e.*, no previous lawful claim against defendant or against plaintiff that Barker refused to defend under his covenant of warranty in the assignment—is fatal to RAMA's claim of breach of warranty. We generally agree.

In Kansas, there can be no breach of a covenant of title in a warranty deed unless the third party's claim is superior to the title or possessory rights of the grantee. See *Bedell v. Christy*, 62 Kan. 760, 763, 64 P. 629 (1901); *Lewis v. Jetz Service Co.*, 27 Kan. App.

2d 937, Syl. ¶ 1, 9 P.3d 1268 (2000). In the typical wording of a covenant of warranty, the grantor covenants to warrant and defend the title conveyed by the deed against all *lawful claims* which may be asserted against it. *Lewis*, 27 Kan. App. 2d at 938 (quoting 14 Powell on Real Property § 81A.06[2][d][i], p. 81A-121 [1999]); see K.S.A. 58-2203. A breach does not occur without a disturbance of possession and eviction under an adverse title which existed at the time of the conveyance." 27 Kan. App. 2d at 938. Our Supreme Court stated that " '[a] covenantee who, voluntarily or without suit, yields to an alleged paramount title or claim assumes the risk of its turning out not to be so.' " *Wood v. Stewart*, 158 Kan. 729, 732, 150 P.2d 331 (1944).

Kansas law is consistent with the majority view, which holds that "[t]itle defects are not actionable as a breach of warranty unless the grantee has been compelled to yield to such title, or is in a situation requiring him or her to do so presently, as a matter of legal duty." 20 Am. Jur. 2d, Covenants, Etc. § 63. Further, "[a] covenantee cannot claim a breach of warranty by reason of the existence of an outstanding title in a third party, where such title is not paramount." 20 Am. Jur. 2d, Covenants, Etc. § 66. In fact, many courts have even held that eviction is requisite before there is a breach of covenant of warranty or of quiet enjoyment. See 4 Williams & Meyers, Oil and Gas Law, § 685.1, pp. 411-12 (2011). Our court quoted a respected treatise on this subject in *Lewis*:

" 'The general effect of a covenant of warranty is that the grantor agrees to compensate the grantee for any loss which the grantee may sustain by reason of a failure of the title which the deed purports to convey, or by reason of an encumbrance on the title. In the typical wording of such a covenant, the grantor covenants to warrant and defend the title conveyed by the deed against the *lawful claims* which may [be] asserted against it. The covenant may be either expressly stated, or it may be implied by the words used or type of deed employed.' 14 Powell on Real Property, § 81A.06(2)(d)(i), p. 81A-121 (1999)." 27 Kan. App. 2d at 938.

RAMA argues that all that must be shown "is a failure of performance as warranted" and that "a specific defect need not be proven." RAMA cites two cases for this proposition. The first discussed the breach of warranties in a construction contract. *Broce-*

*O'Dell Concrete Products, Inc. v. Mel Jarvis Constr. Co.*, 6 Kan. App. 2d 757, 634 P.2d 1142 (1981). The second discusses express warranties accompanying the sale and installation of a transmission. *Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, 571 P.2d 48 (1997). RAMA does not explain how these cases are relevant to a grantor's covenant of title. These cases address warranties in the sale of goods and services and have little if any application to warranty of title. They appear to be inconsistent with Kansas caselaw on warranty of title.

RAMA also argues that the specific language of warranty in the assignment form required Barker to defend the title even absent a lawful claim. RAMA argues that the warranty against "adverse claims" "is all encompassing and not limited in any way" and is distinguishable from "general and limited warranties." According to RAMA, because of the "all adverse claims" language in Barker's warranty, it should not be required to prove that the adverse claims presented by Bear Petroleum are legally sustainable. We disagree.

The specific warranty language provision contained in the assignment form signed by Barker provided:

"And for the same consideration the Assignor covenants with the Assignee, its or his heirs, successors or assigns: That the Assignor is the lawful owner of and has good title to the interest above assigned in and to said lease, estate, rights and property, free and clear from all liens, encumbrances, or adverse claims; That said lease is a valid and subsisting lease on the land above described, and all rentals and royalties due thereunder have been paid and all conditions necessary to keep the same in full force have been duly performed, and that the Assignor will warrant and forever defend the same against *all persons whomsoever lawfully claiming or to claim the same.*" (Emphasis added).

This language is not unique, as the form used appears from the record copy to be a standard Kansas Blue Print assignment form routinely utilized in Kansas for these purposes. The precise language is found in the "Typical Forms and Agreements" section of 2 Brown, The Law of Oil and Gas Leases, Assignment of Oil and Gas Lease with General Warranty §18.03(2), p. 18-168 (2d ed. 2009) (with no alternative form provided), and in Kuntz, Kansas Law of Oil and Gas, p. 232 (1983) (reflecting Form 694 of the American Association of Petroleum Landmen). The precise lan-

guage in the warranty of title provision in *Wood* was not quoted in the court's opinion, but the court stated that for purposes of the appeal it was proceeding on the assumption that the covenants found in the assignment warranted title and ownership. 158 Kan. at 732. Similarly, courts have not focused on precise language in finding that any such covenant is restricted to warranting and defending lawful claims. In *Archer v. Eiland,* No. 02-5026, 2003 WL 1875388, at *1-3 (10th Cir. 2003) (unpublished opinion), the Tenth Circuit Court of Appeals noted that the deed contained a covenant of warranty and quiet enjoyment, and in *Lewis,* this court discussed the warranty of title in a warranty deed. 27 Kan. App. 2d at 938. We are not convinced that the language of Barker's assignment varies materially from language employed, construed, and applied in warranty of title matters in Kansas and beyond.

More importantly, our examination of the language employed here defies RAMA's argument that a lawful claim is not required to trigger Barker's covenant to defend the title. RAMA's reading of the provision is a distortion of its plain meaning. Barker covenanted that his interest was "free and clear" of "adverse claims." But his promise to "warrant and forever defend" was restricted to persons "lawfully claiming or to claim" an adverse interest. Thus, in the absence of a *lawful* adverse claim, Barker had no duty to defend.

We conclude and hold that in the absence of a lawful claim by Bear Petroleum to the interest conveyed to RAMA, Barker had no duty to defend and did not breach his covenant of warranty of title. We must thus examine the record (and specifically the uncontroverted facts at summary judgment) to determine whether the adverse claim of Bear Petroleum was, in fact, lawful, or whether RAMA voluntarily and without suit yielded to a mere allegation of paramount title or claim, taking the risk that the adverse claim might not prove lawful.

*Analysis of Uncontroverted Facts at Summary Judgment*

Some additional background information is necessary to frame this issue: RAMA contended in its petition that the warranty of title was breached by a claim that the leased acreage was "subject to an

oil and gas lease as part of a unitized producing gas unit which was held by production." In his defense of this argument, Barker's summary judgment motion focused on and supported his position that the underlying lease had expired by lack of production. His uncontroverted fact statements included the following facts particularly relevant to the issue on appeal:

"3. The Tyrell lease was originally released of record by the assignee and owner thereof, Bear Petroleum, Inc., which executed and recorded a Release of Oil and Gas Lease on October 3, 1996. Exhibit 3, Release of Oil and Gas Lease.

"4. Defendant requested and received from Bear Petroleum, Inc. a second Release of Oil and Gas Lease that was recorded on March 5, 2001. Exhibit 4, Release of Oil and Gas Lease.

. . . .

"6. Defendant obtained title opinions covering the Babb lease demonstrating that he had good and merchantable title when he assigned the Babb lease to plaintiff. Exhibit 6, Drilling Opinions.

"7. The gas unit did not produce any MCF's of gas from March 1993 th[r]ough October 1996, except 26 MCF's in November 1993 (**3 years, 8 months**) May 1998 through August 1998 (**4 months**), nor January 1999, except 139 MCF's April 1999, th[r]ough March 2001 (**2 years, 3 months**). Exhibit 7, Declaration of David A. Barker [attaching monthly production history from Kansas Corporation and Rice County Assessor's Office].

"8. According to the oil and gas Renditions filed by Bear Petroleum, Inc., the gas unit did not produce gas in paying quantities from 1993 through 1996. The yearly MCF's were:
- 1993   606 (January & February)
- 1994   0
- 1995   0
- 1996   1805 (November & December)

"Exhibit 8-Rice County, Kansas Renditions.

"9. The Tyrell/Fitzgerald leases require that there be production of oil or gas in the secondary term or the leases terminate. Exhibit 9, Oil and Gas Leases."

In response to these proposed uncontroverted facts, RAMA controverted each of these statements as follows:

"3. Controverted. This statement is not properly referenced to any part of the record herein or an affidavit with the Motion. The plaintiff denies that the lease held by Bear Petroleum Inc., was effectively released. (. . . Affidavit of Robin L. Austin . . . "Exhibit A" . . . .)

"4. Controverted. This statement is not properly referenced to any part of the record herein or any affidavit filed with the Motion. Further, the record establishes that any such release was unintentional and withdrawn before it was re-

corded or used by the Defendant to misrepresent the title to Plaintiff. Further, the record shows that after a release was signed and before it was recorded, the party signing the release, Dick Schremmer of Bear Petroleum, Inc., notified the Defendant that the release was unauthorized and unintentional and that its recording or use by the Defendant was prohibited. (. . . Affidavit of Robin L. Austin . . . .)

. . . .

"6. Controverted. This statement is not properly referenced to any part of the record herein or an affidavit filed with the Motion. The title opinions do not demonstrate good and merchantable title and were prepared prior to the actions of the Defendant in refusing to follow the direction of R.A. "Dick" Schremmer that the Defendant not file or utilize the release and in not later disclosing to the Plaintiff the known title defects and adverse claims. (. . . Affidavit of Robin L. Austin . . . .)

"7. Controverted. This statement is not properly referenced to any part of the record herein or any affidavit filed with the Motion. The record herein establishes that the production history cited is incorrect and in error. (. . . Affidavit of Robin L. Austin . . . .)

"8. Controverted. This statement is not properly referenced to any part of the record herein or any affidavit filed with the Motion. The record herein establishes that the production history cited is incorrect and in error. (. . . Affidavit of Robin L. Austin . . . .)

"9. Controverted. The statement is not properly referenced to a part of the record herein. This is not a statement of fact, but rather a conclusion of law which is incorrect. The alleged conclusion fails to take into account the Amendment and Modification and Pooling Declaration which amended the leases. Both leases contain shut-in gas royalty provisions with the Tyrell lease providing . . . [express language of shut-in royalty provision omitted]."

RAMA also stated some additional proposed uncontroverted facts including details of Austin's long-distance phone call with Schremmer, the conversation between Austin and Barker, the fact that Bear Petroleum was holding some royalties owed to the Babbs, the expenses incurred in commencing drilling operations, and another general denial of the accuracy of Barker's production history on the Fitzgerald Gas Unit.

First, we must address whether RAMA successfully controverted either the facts regarding the state of the title or the purported production history presented by Barker.

Turning first to the title documents, the record on appeal reflects that actual copies of the releases bearing recordation data were attached to Barker's memorandum in support of his summary judg-

ment motion, and copies of title opinions obtained by Barker in early 1996 and in early 2001 were also attached as exhibits to the memorandum. Although an affidavit of Austin was cited by RAMA in support of its controversion of these facts, RAMA does not and cannot successfully controvert the existence of the documents except to the extent that it attempts to cloud the effect of the second release in citing a conversation with Schremmer.

Examining RAMA's attempt to controvert the production history, we find it to be a naked conclusory denial of Barker's history without any factual support whatsoever except a reference to a similar general denial contained in RAMA's response to a request for admissions. K.S.A. 60-256(e) requires that the nonmoving party in a summary judgment proceeding must "set forth specific facts showing that there is a genuine issue for trial." This is not merely a practice or a rule, this requirement is a statutory mandate. K.S.A. 60-256(e) provides in part:

"When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, *but the adverse party's response, by affidavits* or as otherwise provided in this section, *must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." (Emphasis added.)

This statute clearly provides that RAMA was required to respond with specific facts showing that there was a genuine issue for trial. Here, RAMA merely stated that production was not as represented by Barker, but it provided no specific facts beyond this conclusory statement. Caselaw in both Kansas state and federal courts have found that conclusory affidavits are insufficient to establish contested facts for summary judgment purposes. See *Korytkowski v. City of Ottawa*, 283 Kan. 122, 132, 152 P.3d 53 (2007) (finding that summary judgment for defendants was appropriate in inverse condemnation case when "the defendants presented ample evidence to support the reasonableness of the projects, and plaintiffs presented no evidence to rebut it, beyond their own unsupported and conclusory affidavits"); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 284-85, 261 P.3d 943 (2011) (finding expert's

conclusory opinions regarding county jail's policies for dealing with suicidal inmates contained in summary judgment affidavit were insufficient to create a genuine issue of material fact in negligence action); *Sherwin-Williams Co. v. Cornerstone Painting, Inc.*, No. 95,262, 2006 WL 2864786, at *2-3 (Kan. App. 2006) (unpublished opinion) (distinguishing between conclusory statements and substantive allegations contained in affidavit); see also *KMMentor, LLC v. Knowledge Mgmt. Professional Soc.*, 712 F. Supp. 2d 1222, 1251 (D. Kan. 2010) (finding conclusory affidavit insufficient to establish contested fact for summary judgment purposes). Thus, we conclude that Austin's affidavit was insufficient to establish a genuine issue of material fact regarding the relevant production history from the lease of the gas unit in question.

*Analysis of Legal Effect of Releases of Record Coupled with Production History on the Gas Unit Containing the Subject Lease*

Next we must address whether the Barker production history and the Bear Petroleum releases were alone sufficient to establish that the previous lease on the acreage had expired. RAMA argues on appeal that periods of nonproduction alone do not establish lease expiration, but rather "a proper analysis requires a weighing of the period of cessation of production together with evidence of the lessee's intent to resume production and of the efforts or lack of efforts by the lessee to resume production of oil or gas," citing *Wrestler v. Colt*, 7 Kan. App. 2d 553, 644 P.2d 1342 (1982).

We certainly do not take issue with the *Wrestler* holding, but we find in RAMA's response to the summary judgment only naked legal arguments that there should be a "weighing of the period of cessation together with evidence of Lessee's intent to resume production." No facts were alleged by RAMA to support any such argument. RAMA also made legal arguments that "shut-in gas payments could have been made to extend the leases," but—again— no facts were alleged by RAMA to suggest that the well generally qualified as a shut-in well under Kansas law. See *Levin v. Maw Oil & Gas*, 290 Kan. 928, 945, 234 P.3d 805 (2010).

We begin with the elementary legal principles guiding our analysis: (1) When the primary term of an oil or gas lease has expired

and the lease is being held upon the condition of continued production only, all rights under the lease terminate if and when production of oil or gas in paying quantities ceases. *Kelwood Farms, Inc. v. Ritchie*, 1 Kan. App. 2d 472, Syl. ¶ 2, 571 P.2d 338 (1977); (2) a mere temporary cessation of production because of necessary developments or operation does not result in the termination of such lease or the extinguishment of rights acquired under its terms. *Eichman v. Leavall Resources Corp.*, 19 Kan. App. 2d 710, 713-14, 876 P.2d 171, *rev. denied* 255 Kan. 1001 (1994); and (3) a shut-in royalty clause in an oil and gas lease enables a lessee, under appropriate circumstances, to keep a nonproducing lease in force by the payment of the shut-in royalty. See *Levin*, 290 Kan. 928, Syl. ¶¶ 3-5; *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 381, 855 P.2d 929 (1993); see also *Welsch v. Trivestco Energy Co.*, 43 Kan. App. 2d 16, 221 P.3d 609 (2009) (general discussion of all these general principles and their application in Kansas), *rev. denied* 291 Kan. 917 (2010).

To avoid expiration due to lack of production after the primary term of a lease, however, it is incumbent on the party making the claim to sustain its burden to show that either of these alternative doctrines is applicable to keep the lease from expiring. That is, in the absence of evidence to show that a lack of production is merely temporary or that shut-in royalty payments have been made to serve as constructive production, an extended period of nonproduction standing alone can indeed serve to support lease expiration. The burden to rebut the clear implication of expiration by lack of production must fall on the party who seeks to demonstrate an exception to the clear effect of the habendum clause in the lease under challenge. See *Tucker*, 253 Kan. at 380-82 (habendum clause is provision defining secondary term of lease after development takes place); *Pray v. Premier Petroleum, Inc.*, 233 Kan. 351, 353-55, 662 P.2d 255 (1983) (detailing burdens on the lessee in establishing applicability of shut-in provisions); *Eichman*, 19 Kan. App. 2d at 714 (burden is on the lessee seeking to prove lease still in effect to establish any cessation of production is temporary and not permanent); see also *Webb v. Hardage Corp.*, 471 So. 2d 889, 892 (La. App. 1985) (a lessee who claims to hold through the payment

of shut-in royalties has the burden of showing that the well was capable of producing in paying quantities).

Here, the undisputed production history presented at summary judgment demonstrated that at the time of Barker's assignment of the Babbs lease to RAMA, there had been no production within the gas unit for 23 months and the operator/lessee of the prior lease (the Tyrell lease) had executed and there were recorded two releases of that interest. Granted, there was some dispute as to whether the second release was a "mistake," but we are *not* inclined to hold that this alone created a genuine issue of material fact that precluded summary judgment as a matter of law for three reasons.

First, every instrument in writing, certified and duly recorded in Kansas, imparts notice to all persons of its contents, and where its validity is called into question, it will not be held invalid absent satisfactory and convincing evidence by the challenging party. See K.S.A. 58-2222; *Palmer v. The Land & Power Co.*, 172 Kan. 231, 239 P.2d 960 (1952).

Second, although not raised by Barker, Schremmer was estopped from asserting rights to the acreage because of the two releases that he executed. See *Adolph v. Stearns, 235 Kan. 622, 629, 684 P.2d 372 (1984)* (" 'A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it has a duty to speak, induced it to believe certain facts existed. It must show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.' [Citation omitted.]"); accord *Schraft v. Leis,* 236 Kan. 28, 36, 686 P.2d 865 (1984). Because no lawful claim was ever brought against RAMA, no findings of fact and conclusions of law allowing appellate review of an estoppel claim are before this court. See *Adolph*, 235 Kan. at 630. But RAMA clearly overreacted to Schremmer's adverse claim given that he was estopped from its assertion. Schremmer's claims contrary to his release were not only estopped, they likely created liability for slander of title. See *Berryman v. Sinclair Prairie Oil Co.*, 164 F.2d 734 (10th Cir. 1947).

Third, the lack of production, together with (i) no factual assertions to support its being merely temporary, (ii) no allegations that the well was a shut-in well with royalty payments being made, and (iii) and at least one undisputed release of record by the prior operator/lessee, cause us to conclude that the prior leases had expired. Under these circumstances, a long-distance phone call with the individual executing the second release who indicated that the release was a "mistake" has little if any evidentiary value on the question of continuing lease validity because of the long-established principle in Kansas that the lack of a release is no evidence that an oil and gas lease is still in force. *Cement Co. v. Brick & Tire Co.*, 100 Kan. 547, 549, 164 P.1087 (1917); see also *Peating v. Baird*, 168 Kan. 528, 536-38, 213 P.2d 1015 (1950) (finding that although no release appeared in the record, the failure of the lessee to file an affidavit showing the happening of any contingency that would extend the express term of the lease disclosed a situation where the lease had expired by its own terms, and therefore it was of no force or effect and constituted no encumbrance on the title).

Based upon RAMA's failure to successfully controvert the production history on the gas unit and the resulting 23 months of nonproduction, its failure to factually support a temporary cessation of production, its failure to support constructive production by reason of shut-in royalty payments, and the fact of at least one undisputed release of record by the operator/lessee of the prior lease on this acreage, we hold that there was no *lawful adverse claim* constituting a breach of Barker's covenant of warranty of title or triggering his duty to defend and he was entitled to judgment as a matter of law at summary judgment.

### DID RAMA'S CLAIM THAT BARKER BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BAR SUMMARY JUDGMENT FOR BARKER?

The only mention by RAMA at summary judgment of its claim of breach of the implied covenant of good faith and fair dealing was the following reference near the end of RAMA's summary judgment brief:

"D. **Defendant David A. Barker breached his express warranty of title made to the Plaintiff for which the Plaintiff is entitled to recover against the Defendant in the amount of $13,356.44.**

"The warranty of title from Defendant David A. Barker was broad and explicit, compelling him to 'forever defend the same against all persons whomsoever, lawfully claiming or to claim the same.' *As with all contracts, Barker owed a duty of good faith, fair dealing and cooperation to the plaintiff as he performed his contractual duties.* [Citations omitted.]

"The Defendant had an obligation to deliver good and merchantable title free of adverse claims and *had an ongoing obligation to inform the Plaintiff of any adverse claims,* which he failed to do. If he had disclosed the true state of the title, the Plaintiff would not have detrimentally relied on the Defendant's misrepresentations." (Emphasis added.)

Beyond this bare-bones articulation of a claim at summary judgment, RAMA did not argue that there existed any genuine issues of material fact that precluded summary judgment against it on this claim, and RAMA never sought summary judgment in its favor on this claim. Our examination of Judge Kitts' memorandum decision on summary judgment reveals that she did not rely on this claim in denying Barker's motion for summary judgment, and RAMA did not cross-appeal this decision. Moreover, on appeal, RAMA's only reliance on this claim is a quote from Article 2 of the UCC and the singular statement in RAMA's appellate brief that "the good faith principal [*sic*] alone, separate and apart from Defendant's express covenants, would provide the legal basis for the Court to uphold the lower court's decision." This conclusory statement alone does not merit our consideration of the claim on appeal. See *Cooke v. Gillespie,* 285 Kan. 748, 758, 176 P.3d 144 (2008) (a point raised incidentally in a brief and not argued there is deemed abandoned). At no time on appeal has RAMA argued that this breach should have precluded summary judgment for Barker even if the prior lease had expired. For all these reasons, we are not inclined to address whether RAMA's claim of breach of the implied covenant of good faith and fair dealing could or should have defeated Barker's summary judgment motion.

In summary and conclusion, we hold that Barker's uncontroverted production history showing no production within the Fitzgerald Gas Unit and on the lease in question for at least 23 months,

coupled with the failure of RAMA to provide factual support for any scenario that could have kept the lease from expiring by its own terms and the fact of at least one duly recorded release by the adverse claimant, demonstrated that there was no lawful claim asserted by Schremmer/Bear Petroleum, thus entitling Barker to summary judgment. We further hold that RAMA failed to adequately defend the summary judgment by its claim that Barker breached his implied duty of good faith and fair dealing and further failed to adequately raise this defense on appeal to warrant our discussion of its merits. For these reasons, we must reverse the decision of Judge Kitts at summary judgment, reverse Judge Bennington's reconsideration of that motion, reverse the subsequent judgment at bench trial, and remand with directions to grant summary judgment for Barker.

Reversed and remanded with directions to enter summary judgment in favor of David A. Barker.

\* \* \*

ATCHESON, J., concurring: I join in Chief Judge Greene's thorough discussion and disposition of the substantive issues in this case. But I pause to note my guarded reservation about the procedural frame the parties have used to display those issues and which the court borrows to decide them. The district court denied summary judgment to defendant David A. Barker, finding there were disputed issues of material fact. The case then proceeded to bench trial, and the district court entered judgment for plaintiff RAMA Operating Company, Inc. in due course. Barker has focused his appeal on the denial of summary judgment.

The Kansas appellate courts have regularly entertained challenges to decisions denying summary judgment, even though the parties' dispute has then been submitted to and resolved by a judge or jury at trial. That basis for appeal is not plainly set forth in any statute or rule; it is a judge-made device. The federal appellate courts, operating under comparable rules, generally do not permit a party losing at trial to appeal the denial of a summary judgment on grounds that the district court arguably erred in finding disputed issues of material fact. See, *e.g., Cravens v. Smith*, 610 F.3d

1019, 1027 (8th Cir. 2010) (cases cited); *Banuelos v. Construction Laborers' Trust Funds*, 382 F.3d 897, 902-03 (9th Cir. 2004) (When a district court denies summary judgment based on a factual dispute and a jury then resolves that dispute, appellate review of the denial amounts to a "pointless academic exercise of deciding whether a factual issue was disputed after it has been decided."); *Paschal v. Flagstar Bank*, 295 F.3d 565, 571-72 (6th Cir. 2002). Under the Kansas Code of Civil Procedure, as with the federal rules, a party denied summary judgment may preserve legal issues or defenses for appeal by incorporating them into a trial motion for judgment as a matter of law. See K.S.A. 60-250(a)(1); K.S.A. 60-252(c).

There are arguments to be made for either approach to denials of summary judgment. But Kansas has long expressed a compelling regard for the insight of jurors and the primacy of jury trials in civil proceedings. See Kansas Constitution Bill of Rights § 5 ("The right of trial by jury shall be inviolate."); *Dixon v. Prothro*, 251 Kan. 767, 774, 840 P.2d 491 (1992) ("Juries, and their position as fact-finding bodies, have such an important place in our system and history that any attempt to curtail the right to jury trial should be examined with the utmost care."); *Hasty v. Pierpont*, 146 Kan. 517, 520-21, 72 P.2d 69 (1937). A practice that elevates the dueling affidavits and deposition excerpts of summary judgment over the actual fact-finding of a jury (or a judge) after seeing witnesses and hearing evidence might be questioned as unwise or as lacking due respect for the trial process.

In this case, however, the parties have not raised those questions. And without the benefit of the sharpened debate of advocates advancing competing legal arguments, I have no intention of suggesting here and now if a denial of summary judgment ought to be appealable following a trial on the merits to a judge or a jury. See *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 382-83, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980) ("The clash of adverse parties ' "harpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." ' "). By the same token, my concurrence in reversing the district court

in this case should not be construed as a suggestion one way or the other.