NOT DESIGNATED FOR PUBLICATION

No. 113,511

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

POSTAL PRESORT, INC.,
and
EMPLOYER ADVANTAGE,
*Appellants*,

v.

BRANDON N. NELSON
and
EMPLOYMENT SECURITY BOARD OF REVIEW,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN JOSEPH TERNES, judge. Opinion filed February 19, 2016. Affirmed.

*Kurt A. Harper*, of Sherwood, Harper, Dakan, Unruh & Pratt, LC, of Wichita, for appellants.

*Ashlee N. Yager*, and *Glenn H. Griffeth*, special assistants attorney general, of Legal Services, Kansas Department of Labor, for appellees.

Before ARNOLD-BURGER, P.J., GREEN and STANDRIDGE, JJ.

*Per Curiam*:  Postal Presort, Inc., and Employer Advantage (hereinafter collectively referred to as Postal Presort unless specifically designated) petitioned for judicial review of the decision by the Employment Security Board of Review (Board). The Board determined that Brandon N. Nelson was eligible to receive unemployment benefits. The Board concluded that Postal Presort had terminated Brandon's employment

1

because he had littered cigarette butts by his car during his lunch break. The Board determined that this did not constitute misconduct disqualifying Brandon from receiving unemployment benefits under K.S.A. 2014 Supp. 44-706(b). The trial court affirmed the Board's decision. On appeal, Postal Presort contends (1) that the Board failed to consider all the evidence of Brandon's misconduct in violation of K.S.A. 2014 Supp. 77-621(c)(3); (2) that the Board and the trial court misapplied the law in violation of K.S.A. 2014 Supp. 77-621(c)(4); (3) that the Board's decision was not supported by substantial evidence in light of the record as a whole in violation of K.S.A. 2014 Supp. 77-621(c)(7), (d); and (4) that even if the Board terminated Brandon for the cigarette butt incident alone, this conduct constituted misconduct under K.S.A. 2014 Supp. 44-706(b).

Nevertheless, for reasons discussed below, all of Postal Presort's arguments fail. As a result, we conclude that the trial court properly affirmed the Board's decision.

Postal Presort employed Brandon as an information technology (IT) print clerk from February 13, 2013, to June 24, 2014. When Brandon started working at Postal Presort, Postal Presort gave him a copy of the employee handbook. One rule in the handbook states that "smoking where prohibited by company policy" may result in discipline or discharge. In February 2014, Bryan Pulliam, the owner of Postal Presort, sent an email to all employees explaining that many employees were littering their cigarette butts instead of discarding their cigarette butts in the designated "cans at both ends of the north side of the [Postal Presort] building." Pulliam requested that the employees use the designated cans or else "[t]he alternative [would] be a total ban on smoking on the premises except within personal cars."

On June 24, 2013, Brandon was sitting in his parked car smoking cigarettes during his lunch break. Brandon threw his cigarette butts on the ground directly outside of his driver's side door. Pulliam saw Brandon's discarded cigarette butts. Pulliam confronted Brandon outside the Postal Presort building. Brandon did not deny that he had tossed the

cigarette butts on the ground outside of his car. Pulliam told Brandon to go home so Pulliam could think about what he was going to do. Pulliam terminated Brandon's employment later that evening.

Brandon filed for unemployment benefits. Employer Advantage, the company Postal Presort contracts with to handle human resource issues, completed a form for the Kansas Department of Labor (DOL) contesting Brandon's eligibility for unemployment benefits. On this form, Employer Advantage stated that Brandon was "discharged/fired." Employer Advantage wrote that the final incident leading to Brandon's termination: "Improper conduct—Smoking in this area is specifically prohibited [by] company handbook except if done 'in their personal vehicle.' [T]hrew cigarette butts on the ground." Employer Advantage attached the excerpt from Postal Presort's employee handbook stating that an employee could be disciplined or discharged for smoking in prohibited areas. Employer Advantage also attached Pulliam's February 2014 email about the proper disposal of cigarette butts. Neither Postal Presort nor Employer Advantage provided the DOL with any other information.

A DOL examiner held a telephone interview with Brandon regarding his unemployment benefits eligibility. Brandon told the examiner that Postal Presort never gave him a clear reason for his termination. Brandon further explained how Postal Presort terminated him several hours after the cigarette butt incident.

The examiner determined that Brandon was eligible for unemployment benefits. The examiner found that Postal Presort had not established that it terminated Brandon for misconduct connected to his job as an IT print clerk as required under K.S.A. 2014 Supp. 44-706(b). The examiner also found that Postal Presort had submitted "insufficient or incomplete" information. As a result, the examiner ruled that Postal Presort waived its standing as a party to the proceedings unless it could establish excusable neglect under K.S.A. 2014 Supp. 44-709(b).

3

Postal Presort appealed the examiner's determination. It seems the examiner reconsidered the original determination because the examiner issued a second determination. Again, the examiner determined that Brandon was eligible for unemployment benefits. The examiner determined that Postal Presort had failed to show that Brandon had committed misconduct under K.S.A. 2014 Supp. 44-706(b). The examiner explained that Postal Presort provided insufficient evidence "to establish the claimant's conduct was a violation of a duty or obligation reasonably owed [to] the employer as a condition of employment." This time, however, the examiner did not rule that Postal Presort had waived its standing.

Postal Presort appealed the examiner's determination. An appeals referee held a full evidentiary hearing. At the hearing, Postal Presort argued that it had terminated Brandon not only for the cigarette butt incident, which it argued constituted misconduct in and of itself, but also for other conduct it believed constituted misconduct under K.S.A. 2014 Supp. 44-706(b). Evelin Nicholes, Postal Presort's administrative manager; Annette Pulliam, Brandon's direct supervisor; and Bryan Pulliam testified on Postal Presort's behalf.

Evelin testified that Postal Presort terminated Brandon because of his excessive absenteeism, sloppy appearance, and attitude problems. During Evelin's testimony, Postal Presort admitted Brandon's personnel file into evidence. This exhibit included documentation of Brandon's disciplinary employee review which he received on August 15, 2013. Brandon's employee review stated that Postal Presort disciplined Brandon for the following shortcomings: (1) having 13 unexcused absences; (2) having poor posture; (3) having a poor attitude; (4) having less respect for female supervisors; and (5) having a poor performance on a specific work task.

When asked to explain Postal Presort's policy on absences, Evelin explained that when an employee misses work, simply calling in does not make the absence excused if

4

the absence was unscheduled. That is, when employees call in the day they intend to take off, whether they are sick or just want time off, Postal Presort considers that absence unexcused. Evelin admitted that Brandon had fewer unexcused absences after his employee review. Evelin testified that Brandon had only 5 unexcused absences in his final 10 months at work. Evelin also admitted that in March 2014, Brandon received a raise from $9.50 per hour to $12 per hour.

Concerning the day Postal Presort terminated Brandon, Evelin testified that Postal Presort's weekly manager's meeting was held immediately after the cigarette butt incident. Evelin testified that at that meeting, the managers discussed many of Brandon's infractions as an employee supporting his termination. Evelin testified that she, Annette, and Pulliam compiled a list of the infractions supporting Brandon's termination in emails sent June 27, 2014, and June 28, 2014. Those emails, which were admitted into evidence, stated that Postal Presort terminated Brandon because of the cigarette butt incident, his excessive absenteeism, his frequent slouching, his "sloppy appearance," his lazy behavior, his disrespectful and argumentative behavior, and his frequent printing mistakes. Regarding Brandon's sloppy appearance, it seems that Brandon refused to wear Postal Presort's company polo shirt to work.

Annette testified that Brandon had many problems at work, including frequent slouching, inappropriate work attire, moodiness, and printing mistakes.

Pulliam testified that when management had a problem with an employee, management would take the following series of progressive steps until the problem was resolved or the employee was terminated: (1) that the employee's supervisor would discuss the problem with the employee directly; (2) that management would talk about the employee's problem at the weekly manager's meeting; (3) that Pulliam would discuss the problem with the employee directly; (4) that management would write a formal written sanction that became a part of the employee's record; (5) that management would

5

make the employee take a paid day off to decide whether to fix the problem or quit; and (6) that if necessary, Pulliam would terminate the employee. Pulliam testified that this policy was not mandatory.

Pulliam further testified that Brandon frequently wore inappropriate work attire and made printing mistakes. When asked about what was discussed at the manager's meeting following the cigarette butt incident, Pulliam stated:

> "Well, I took to the meeting his specific behavior moments before, which were so blatantly and grossly against my very publicly known attitude about cigarette butts on the ground, and how he sat in his car and I will say, nearly with disdain, listened to me ask him a question about the brand of cigarettes he smokes, identified that I had found a number of those in the area where he commonly parked and then I looked down at the ground right behind him, where he had just discarded one that was still smoking, so I took that to the meeting and let my managers know that that behavior alone, in light of my known and public attitude on this, could constitute termination but I wanted more information before I would make a decision, so we all talked about quite a number of things which I would say included all of the items that later were put into Annette's . . . infraction list. So the infraction list would consummate all manner of things we talked about and this discussion about Brandon to come to a decision to terminate him was not based on the one cigarette issue but a full 40 minutes of discussion about 6 of the highest level people in the company."

Regarding Brandon's March 2014 pay raise, Pulliam testified that Brandon received the raise because he gave Brandon more duties, not because Brandon had improved as an employee.

Although none of Postal Presort's witnesses testified in detail about Postal Presort's employee handbook, Pulliam's February 2014 cigarette email, or Brandon's employee separation form, Postal Presort admitted each into evidence as part of Brandon's personnel file. On Brandon's employee separation form dated June 30, 2014,

Evelin marked that Postal Presort involuntarily terminated Brandon for a "violation of a company policy" and "performance/neglect of duties." The employee separation form also included boxes that could be marked if Postal Presort terminated an employee for "excessive absenteeism," "insubordination," or any "other" reason. Evelin did not mark those boxes on Brandon's employee separation form. Evelin did write "see attached notes" on the form, but it seems that those notes are not included or have been misidentified in the record on appeal.

Brandon testified on his own behalf. Brandon testified that Postal Presort terminated him because of the cigarette butt incident. When asked about the company polo shirt, Brandon testified that he would not wear the company polo shirt because he had a problem keeping shirts tucked into his pants. Brandon explained that he believed the polo shirt would not remain tucked. When asked about slouching, Brandon explained that when he slouched he did so without realizing. Brandon also testified that he never intentionally disrespected his supervisors. Finally, Brandon testified that other than his issue with unexcused absences before his August 2013 employee review, he was unaware of any conduct that was placing his job in jeopardy.

The referee issued a written decision a week after the hearing. The referee affirmed the examiner's decision. The referee determined that Brandon was eligible for unemployment benefits. The referee made this determination because she found that because Postal Presort terminated Brandon for the cigarette butt incident alone, which she found was not work related misconduct under K.S.A. 2014 Supp. 44-706(b). In explaining her decision, the referee stated:

> "The claimant [Brandon] testified after he was given a written warning about his absences in August 2013; then he improved his absences. With regard to the cigarette butt memorandum, he doesn't deny he may have received it but isn't sure he read it. He was unaware his job was in jeopardy. [Pulliam] testified the claimant was discharged due

7

to excessive absences and attitude. He stated he had the claimant in his office more than any other employee. However there was no testimony the claimant was ever suspended or given any other write-ups after August 13, 2013 to let the claimant know the employer was dissatisfied with his absences and overall attitude. While the Referee does not condone the claimant's lack of respect for the employer's property or the city in which he lives by littering the parking lot and street with his discarded cigarette butts, the employer has not established the claimant was discharged for misconduct connected with work."

Postal Presort appealed the referee's decision to the Board. The Board reviewed the referee's decision and affirmed. The Board adopted the referee's findings of fact and conclusions of law, stating that it "agree[d] with the previous decision made by the Referee."

Postal Presort filed a petition for judicial review in the Sedgwick County trial court. In Postal Presort's petition, Postal Presort argued that the Board erred "by adopting the findings of fact and conclusions of law of the Referee, and in particular by failing to find that the Employee was disqualified from receiving benefits because he was discharged for misconduct, including violations of rules known to employee." The Board responded that the trial court should affirm its decision.

The trial court held a hearing on Postal Presort's appeal. At the hearing, Postal Presort argued that the Board erred because in light of the record as a whole, it clearly terminated Brandon for violating its policies on cigarettes, posture, attire, attitude, and certain printing policies. Postal Presort asserted that each violation constituted misconduct because Brandon had a duty to follow those policies.

The Board argued that Postal Presort terminated Brandon because he threw cigarette butts on the ground outside his car door during his lunch break. The Board asserted that Postal Presort did not prohibit this conduct, noting that Pulliam's February 2014 cigarette email explicitly stated that smoking in one's personal car would be the

8

only alternative available to the employee smokers if they did not stop littering cigarette butts around the Postal Presort building. Accordingly, the Board asserted that it had correctly determined that Brandon was eligible for unemployment benefits because although Postal Presort terminated Brandon, Postal Presort did not terminate him for any misconduct under K.S.A. 2014 Supp. 44-706(b).

At the end of the hearing, the trial court requested that Postal Presort and the Board submit proposed decisions. Both parties submitted proposed decisions, reiterating their arguments before the trial court. In the Board's proposed decision, the Board further stressed that Postal Presort's termination of Brandon for "poor absences was an afterthought for the purposes of an unemployment claim, and not the actual reason for termination."

The trial court ultimately ruled that the Board did not err by determining that Brandon was eligible for unemployment benefits. The trial court explained that the evidence supported that Postal Presort terminated Brandon for the cigarette butt incident alone and that littering did not constitute misconduct under K.S.A. 2014 Supp. 44-706(b). In reaching this decision, the trial court stated:

> "While reasonable people might disagree about the appropriateness of the Agency's actions here, the Court cannot find that such actions were unreasonable, given the information the Agency had in front of it. The Court has examined the Findings of Fact made by the Agency . . . and find that they are supported by the testimony of the parties at the hearing. The Petitioner has not sustained its burden to show that the Agency acted in an arbitrary and capricious manner.
>       . . . .
> "The record is clear that Claimant had a history of difficulties at work. It is also clear that those issues had been addressed by the Employer. The Referee acknowledged this in her Findings of Fact. . . . The Employer has the burden to show that the Referee has erred in her evaluation of Claimant's behavior, and that the behavior should be considered 'misconduct' under the law. The Employer has failed to show how Claimant's

9

smoking behavior is sufficiently connected with Claimant's work, as set out by the Referee."

*Is Brandon Eligible for Unemployment Benefits?*

Postal Presort argues that the Board erred by determining that Brandon was eligible for unemployment benefits. In addition, Postal Presort also argues that the trial court erred by affirming the Board's decision. On appeal, Postal Presort argues that the Board erred in four ways.

First, Postal Presort argues that the Board violated K.S.A. 2014 Supp. 77-621(c)(3) by failing to decide a fundamental issue requiring resolution, *i.e.*, "whether repeated, knowing breaches of [Postal Presort's] policies constituted 'misconduct.'" Second, Postal Presort argues that both the Board and the trial court misapplied the law in violation of K.S.A. 2014 Supp. 77-621(c)(4). Third, Postal Presort argues that substantial evidence in light of the record as a whole does not support the Board's decision in violation of K.S.A. 2014 Supp. 77-621(c)(7). Postal Presort argues that the evidence before the Board proved that it terminated Brandon for multiple instances of misconduct, not just the cigarette butt incident. Specifically, Postal Presort asserts that in addition to the cigarette butt incident, it terminated Brandon because he violated its written policies on absences, posture, proper work attire, and proper attitude when interacting with supervisors and coworkers. Fourth, Postal Presort argues that each of the preceding violations constitutes disqualifying misconduct under K.S.A. 2014 Supp. 44-706(b).

The Board, however, counters that substantial evidence in light of the record as a whole supports that Postal Presort discharged Brandon for the cigarette butt incident alone. The Board argues that the cigarette butt incident did not constitute misconduct under K.S.A. 2014 Supp. 44-706(b). Thus, the Board asserts that Brandon is eligible to receive unemployment benefits. The Board also argues that Postal Presort came up with

its additional complaints about Brandon's absences, posture, attire, and attitude as an "afterthought to rebut an unemployment claim." Therefore, the Board asks this court to affirm the trial court's ruling and charge Postal Presort's unemployment account.

*Standard of Review*

Actions by the DOL must be reviewed in accordance with the Kansas Judicial Review Act. (KJRA), K.S.A. 77-601 *et seq.*, under K.S.A. 2014 Supp. 44-709(i). When reviewing the agency's action, appellate courts exercise the same statutorily limited review of the agency's action as does the trial court. An appellate court must treat the appeal as though it had been made directly to the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). As a result, an appellate court must review the agency's factual findings to determine if such findings are supported by substantial evidence when viewed "in light of the record as a whole." K.S.A. 2014 Supp. 77-621(c)(7), (d). Any statutory interpretations made by the agency are subject to de novo review. *Milano's, Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 500, 293 P.3d 707 (2013).

Under K.S.A. 2014 Supp. 77-621(c) of the KJRA, the court reviewing the agency action shall not grant relief unless it determines that the agency violated one or more of the provisions of K.S.A. 2014 Supp. 77-621(c)(1)-(8). The burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2014 Supp. 77-621(a)(1).

*The Board Considered All the Evidence of Misconduct*

First, Postal Presort argues that the Board erred by not considering all the reasons it terminated Brandon. Postal Presort argues that the Board ignored the evidence that Brandon was terminated for violating its policies on absences, posture, proper work attire, and proper attitude when interacting with supervisors and coworkers. Postal

11

Presort asserts that the Board failed to consider whether repeated breaches of those policies constituted misconduct. In its facts section, Postal Presort states that the Board based its decision solely on the form Employer Advantage returned to the DOL. Again, this form stated that Postal Presort terminated Brandon for the cigarette butt incident. Postal Presort contends that this court must determine that Brandon was ineligible for unemployment benefits because the Board did not "decide[] an issue requiring resolution" in violation of K.S.A. 2014 Supp. 77-621(c)(3).

Nevertheless, the record on appeal shows that the Board considered all of the evidence. Again, the Board adopted the referee's findings of facts and conclusions of law. In the referee's decision, the referee found that Brandon had been reprimanded for absences. The referee noted that Brandon's August 2013 employee review stated that he "had 13 unexcused call-in absences which were unplanned and represented a 10% absence ratio." The referee further noted that the employee review stated that Brandon "had a negative attitude, poor posture consisting of slouching at his computer, didn't appear as if he wanted to grow or get along with others, [did] not [have] as much respect for females as males and [had] unsatisfactory archiving." Contrary to Postal Presort's assertion, the referee never even referenced the form Employer Advantage submitted to the DOL in its decision.

Thus, the referee considered all of Postal Presort's allegations about Brandon but found that other evidence indicating that Postal Presort terminated Brandon for the cigarette butt incident alone outweighed any contrary evidence. This was evidenced by the referee's recognition that even though Pulliam testified that he terminated Brandon because of absenteeism, Pulliam's testimony was contradicted by the fact that Brandon had received no formal discipline for absenteeism following his August 2013 employee review. In essence, Postal Presort seems to believe that because the referee did not find that Brandon was terminated for absences, posture, attire, and attitude issues, the referee did not consider the evidence. Yet, this was clearly not the case. The referee considered

12

all of the evidence. As a result, the Board also considered all of the evidence when it adopted the referee's decision. Accordingly, Postal Presort's argument is unpersuasive.

*Postal Presort Has Not Established That Either the Board or the Trial Court Misapplied the Law*

Next, Postal Presort argues that the Board and the trial court misapplied the law in violation of K.S.A. 2014 Supp. 77-621(c)(4). K.S.A. 2014 Supp. 77-621(c)(4) states that the court shall grant relief if it determines that "the agency has erroneously interpreted or applied the law." Postal Presort asserts that the Board misapplied the law because it failed to decide an issue requiring resolution as stated in K.S.A. 2014 Supp. 77-621(c)(3) and because substantial evidence in light of the record as a whole does not support its decision as required by K.S.A. 2014 Supp. 77-621(c)(7). If this is a correct summary of Postal Presort's arguments, we have addressed each of these arguments in later sections of this opinion.

*Postal Presort Has Failed to Prove That Substantial Evidence in Light of the Record as a Whole Does Not Support The Board's Decision or That Brandon's Violations of Its Policies on Absences, Posture, Attire, and Attitude Constitute Misconduct Under K.S.A. 2014 Supp. 44-706(b)*

Again, in its brief, Postal Presort argues that in addition to the cigarette butt incident, it terminated Brandon for violating its policies on absences, posture, proper work attire, and proper attitude when interacting with supervisors and coworkers. Postal Presort argues that the Board's decision violates K.S.A. 2014 Supp. 77-621(c)(7) because in light of the record as a whole substantial evidence does not support the Board's conclusion that Postal Presort terminated Brandon for the cigarette butt incident alone. For this argument to succeed on appeal, however, Postal Presort must also prove that

13

Brandon's alleged violations of its policies on absences, posture, attire, and attitude constitute misconduct under K.S.A. 2014 Supp. 44-706(b).

*Substantial Evidence in Light of the Record as a Whole Supports That Postal Presort Terminated Brandon for the Cigarette Butt Incident Alone*

The strongest evidence in support of Postal Presort's argument that it terminated Brandon's employment not only for the cigarette butt incident but also for his unexcused absences, poor posture, inappropriate work attire, and negative attitude toward supervisors and coworkers was the testimony of Evelin, Annette, and Pulliam. They testified that they all discussed those issues at their weekly manager's meeting held before they terminated Brandon. Postal Presort contends that the discussion Evelin, Annette, and Pulliam had about Brandon at the weekly manager's meeting was documented in the June 27, 2014, and June 28, 2014, emails. Those emails detail Brandon's numerous problems at work, including that he had attendance, posture, "sloppy appearance," and attitude problems. Moreover, Brandon's August 2013 employee review documents that Postal Presort had previously reprimanded Brandon for his attendance, posture, and attitude problems.

Nevertheless, other evidence in the record on appeal offset the weight of this evidence. First, when Postal Presort initially contested Brandon's unemployment benefits eligibility, it told the DOL that it terminated Brandon based on the cigarette butt incident alone. Again, Employer Advantage stated on the form it submitted to the DOL that Brandon was terminated for the following reasons: "Improper Conduct—Smoking in this area is specifically prohibited [by] company handbook except if done 'in their personal vehicle.' [T]hrew cigarette butts on the ground." Employer Advantage provided no other explanation as to why Postal Presort terminated Brandon. Before the trial court, Postal Presort addressed Employer Advantage's explanation, stating that "the person who filled out the form focused on a particular event which was an event the day immediately

14

[preceding] Mr. Nelson receiving notice of termination. . . ." Yet, this response does not explain why the Employer Advantage employee decided to write down that Postal Presort terminated Brandon for the cigarette butt incident alone.

Moreover, on appeal, Postal Presort has not argued that Employer Advantage somehow erred in filling out this form. Instead, in the facts section of its brief, Postal Presort contends that it is not bound by Employer Advantage's representation in this form because the referee "confirmed that neither the agency nor the Employer were bound by the initial recitations in the Employer's response to the unemployment claim" and because the Board's attorney "conceded that the hearing officer was not bound by any limitations contained in the Employer's initial form." This contention, however, is not completely correct. Although the referee allowed Postal Presort to present evidence that it terminated Brandon for reasons other than the cigarette butt incident, the referee never stated that Postal Presort was not bound by what its agent Employer Advantage stated in the form submitted to the DOL. The page Postal Presort cites to support this contention is merely its own statement before the trial court that "[t]he referee at the time of the hearing recognized that the referee was not bound by the written record solely and extended the scope of the evidence to include all these different bases . . . ." Furthermore, the Board's attorney explicitly stated that although the referee could look at information in addition to the form Employer Advantage submitted to the DOL, Postal Presort was bound by Employer Advantage's statements on the form.

Based on the preceding evidence, the logical conclusion is that Employer Advantage wrote that Postal Presort terminated Brandon for the cigarette butt incident because management in Postal Presort told Employer Advantage that it terminated Brandon for the cigarette butt incident. Employer Advantage's and Postal Presort's failure to include anything but the cigarette butt incident as an explanation for Brandon's termination in the form submitted to the DOL supports the Board's assertion that the other explanations for Brandon's termination were "an afterthought."

15

Second, the employee separation form completed by Evelin states that Postal Presort terminated Brandon only for a "violation of company policy" and "performance/neglect of duties." Even though this form contained boxes Postal Presort could use to mark if it terminated the employee for "excessive absenteeism," "insubordination," or any "other" reason, Evelin did not mark those boxes. Evelin's failure to mark those boxes further suggests that the real reason for Brandon's termination was the cigarette butt incident.

Third, the emails between Evelin, Annette, and Pulliam were sent after Pulliam had terminated Brandon. Postal Presort terminated Brandon on June 24, 2014. Evelin, Annette, and Pulliam sent the emails on June 27, 2014, and June 28, 2014. The fact the emails were made after Postal Presort had already terminated Brandon supports the Board's assertion that the additional reasons for terminating Brandon were simply an afterthought. Furthermore, within the emails, Pulliam specifically stated that he wanted a list of reasons to support Brandon's termination to include in Brandon's personnel file "for use if he files [for] unemployment." The fact that Pulliam requested email responses from Evelin and Annette specifically for the purpose of thwarting Brandon's potential unemployment benefits claim indicates that Pulliam was seeking a laundry list of reasons to bolster his decision to terminate Brandon.

Fourth, although Postal Presort presented evidence that Brandon continued to have what it considered unexcused absences in 2014, Postal Presort never formally reprimanded Brandon for any unexcused absences after his August 2013 employee review. In fact, although evidence that Evelin, Annette, and Pulliam continued to take issue with Brandon's posture and attitude after his August 2013 employee review exists, it seems that Postal Presort never again formally reprimanded Brandon for those problems after the August 2013 review. Accordingly, Postal Presort's failure to discipline Brandon for absences, posture, attire, or attitude even once during his final 10 months of

16

employment strongly supports (1) that those problems were no longer serious problems and (2) that those problems were not the real reason Postal Presort terminated Brandon.

Fifth, the fact Postal Presort gave Brandon a 26.3% raise in March 2014 inconsistent with Postal Presort's assertion that Brandon was consistently violating its policies on absences, posture, attire, and attitude. At the hearing before the referee, Pulliam suggested that Brandon received the raise because he had assigned Brandon more tasks, not because Brandon improved as an employee. Yet, why would Postal Presort assign Brandon more work if he was incapable of performing his current tasks without violating organizational rules? Why would Postal Presort assign Brandon more work if he regularly had unexcused absences? If Brandon frequently had unexcused absences, then assigning him more work would only result in additional unplanned work for his coworkers who had to take over his work when he was unexpectedly absent. In total, the raise was inconsistent with Postal Presort's assertion that Brandon was a subpar employee.

Sixth, Postal Presort did not follow its own six-step procedure for dealing with employee problems. Instead, during the confrontation over the cigarette butts, Pulliam told Brandon to go home. An employee being forced to take a paid day off is the fifth step of Postal Presort's six-step procedure. This action in addition to the fact that Brandon was terminated just a few hours after the cigarette butt incident supports the determination that Postal Presort terminated Brandon for the cigarette butt incident alone.

In summary, despite Evelin's, Annette's, and Pulliam's testimony that Brandon was terminated not only for the cigarette butt incident but also for his unexcused absences, poor posture, inappropriate work attire, and negative attitude, the following evidence suggests otherwise: (1) that Postal Presort's agent, Employer Advantage, submitted a form to the DOL stating that Brandon was terminated because of the cigarette butt incident; (2) that Brandon's employee separation form completed by Evelin stated that

17

Brandon was terminated because of a "violation of company policy" and "performance/neglect of duties" but not for "excessive absenteeism," "insubordination," or any "other" reason; (3) that the emails between Evelin, Annette, and Pulliam were made after Pulliam had already terminated Brandon, and Pulliam specifically stated that he wanted a list of reasons to support Brandon's termination in case Brandon filed for unemployment benefits; (4) that Postal Presort never formally disciplined Brandon for any infraction following his August 2013 employee review; (5) that Postal Presort gave Brandon a raise in March 2014; and (6) that Postal Presort did not follow its own six-step procedure when it terminated Brandon.

As previously detailed, to successfully argue that the Board erred, Postal Presort must prove that substantial evidence in light of the record as a whole does not support the Board's decision. So long as substantial evidence in light of the record as a whole support the agency's evidentiary findings, this court will not reweigh the evidence the agency's findings rests upon. See K.S.A. 2015 Supp. 77-621(c)(7), (d); *Wiehe v. Kissick Construction Co.*, 43 Kan. App. 2d 732, 741-42, 232 P.3d 866 (2010). Here, the only evidence that fully supports Postal Presort's explanation for why it terminated Brandon is the testimony of Evelin, Annette, and Pulliam. Given the referee's findings, which the Board adopted, the referee clearly made a credibility determination that other evidence outweighed this testimony. Based on all of the evidence indicating Postal Presort terminated Brandon for the cigarette incident alone, this determination was reasonable in light of the record as a whole. Accordingly, the Board did not err and the trial court did not err in affirming the decision of the Board.

Assuming arguendo that even if substantial evidence in light of the record as a whole does not support the Board's decision, Postal Presort's argument that Brandon's alleged violations of its policies on absences, posture, attire, and attitude constitute misconduct under K.S.A. 2014 Supp. 44-706(b), we consider and reject it.

18

Under K.S.A. 2014 Supp. 44-706(b), an employee does not qualify for unemployment benefits if that employee "has been discharged or suspended for misconduct connected with the individual's work." Misconduct constitutes any

"violation of a duty or obligation reasonably owed the employer as a condition of employment including, but not limited to, a violation of a company rule, including a safety rule, if: (A) The individual knew or should have known about the rule; (B) the rule was lawful and reasonably related to the job; and (C) the rule was fairly and consistently enforced." K.S.A. 2014 Supp. 44-706(b)(1)(A)-(C).

On appeal, Postal Presort argues that Brandon committed misconduct as outlined under K.S.A. 2014 Supp. 44-706(b)(1)(A)-(C) by violating its written policies on absences, posture, attire, and attitude. Postal Presort argues that Brandon knew about the policies as required by K.S.A. 2014 Supp. 44-706(b)(1)(A), the policies were reasonably related to his job as required by K.S.A. 2014 Supp. 44-706(b)(1)(B), and the policies were fairly and consistently enforced as required by K.S.A. 2014 Supp. 44-706(b)(1)(C).

It seems that Postal Presort has met its burden to prove prong (A) and (B) of K.S.A. 2014 Supp. 44-706(b)(1). Postal Presort's employee handbook states that an employee may be disciplined or discharged for the following behaviors: (1) "[i]nsubordination"; (2) "[f]ailure to maintain personal habits so as to not be offensive to others"; (3) "[f]ailure to demonstrate a sincere ongoing effort to maintain a good working relationship with all other employees, supervisors and customers by dealing effectively with individual differences"; (4) "[u]nauthorized or unexcused tardiness or absences from work"; (5) "[i]ncidents of poor judgment"; and (6) "[v]iolations of company policies."

Because the employee handbook policies are very broad, the policies arguably encompass any misconduct concerning unexcused absences, poor posture, inappropriate work attire, and negative attitude. More importantly, Postal Presort certainly put Brandon on notice of its policies regarding unexcused absences, poor posture, and negative

19

attitude when it disciplined Brandon at his August 2013 employee review. Furthermore, each of Brandon's alleged policy violations relate to his job as a Postal Presort employee.

Nevertheless, it is unclear whether any of those violations constitute misconduct under K.S.A. 2014 Supp. 44-706(b) because Postal Presort has failed to adequately brief whether it fairly and consistently enforced its policies as required under prong (C) of K.S.A. 2014 Supp. 44-706(b)(1). In its brief, Postal Presort simply asserts that it fairly and consistently enforced its policies without any additional analysis or explanation. When an appellant makes a conclusory statement without any additional argument or evidence, that appellant has abandoned the argument. See *RAMA Operating Co. v. Barker*, 47 Kan. App. 2d 1020, 1036, 286 P.3d 1138 (2012) "holding that a conclusory argument without explanation is insufficient to avoid the rule that a point raised incidentally in a brief and not argued therein is abandoned on appeal."

As a result, Postal Presort has abandoned its argument that Brandon's violations of its policies on absences, posture, attire, and attitude constitute misconduct because it has failed to explain how it fairly and consistently enforced its policies. On the record before us, faced with only conclusory allegations and unsupported factual assertion, we determine that Postal Presort's argument is unpersuasive.

Finally, because Postal Presort has failed to establish (1) that the Board failed to consider all evidence of misconduct, (2) that the Board or the trial court misapplied the law, or (3) that the Board's decision is not supported by substantial evidence, the only way Postal Presort can successfully argue that the Board erred was by proving that the cigarette butt incident constituted misconduct under K.S.A. 2014 Supp. 44-706(b).

As previously detailed, the Board adopted the referee's decision that littering cigarette butts did not constitute misconduct disqualifying Brandon from receiving unemployment benefits under K.S.A. 2014 Supp. 44-706(b). On appeal, Postal Presort

20

argues that the Board erred by adopting the referee's decision because Brandon committed misconduct by knowingly breaking its policy on littering cigarette butts. Nevertheless, there are several problems with Postal Presort's argument.

First, as with Postal Presort's argument that Brandon's violations of its policies on absences, posture, attire, and attitude constitute misconduct, Postal Presort has abandoned any argument that the cigarette butt incident constituted misconduct. In its brief, Postal Presort argued that Brandon committed misconduct under K.S.A. 2014 Supp. 44-706(b)(1)(A)-(C) because he knew about certain company policies, those policies were related to his job, and those policies were fairly and consistently enforced. Yet, Postal Presort made only conclusory statements concerning how it fairly and consistently enforced the cigarette butt policy. Given that Postal Presort has failed to provide this court with any information on how it fairly and consistently enforced its cigarette butt policy, Postal Presort has abandoned its argument that Brandon committed misconduct by littering his cigarette butts. See *RAMA Operating Co.*, 47 Kan. App. 2d at 1036.

Next, even if Postal Presort had not abandoned its argument, Postal Presort's argument that Brandon committed misconduct disqualifying him from receiving unemployment benefits by littering his cigarette butts would still fail because Postal Presort's own policies did not prohibit Brandon's conduct. Under K.S.A. 2014 Supp. 44-706(b)(1)(A), an employee's action constitutes misconduct only if the employee "knew or should have known about the rule." The Postal Presort employee handbook states that an employee may be disciplined or discharged for "smoking where prohibited by company policy." Brandon was not terminated for smoking in a place prohibited by Postal Presort; thus, this rule is inapplicable for purposes of determining whether Postal Presort terminated Brandon for misconduct. Moreover, the policy regarding littering cigarette butts in Pulliam's February 2014 email did not prohibit Brandon's conduct. In Pulliam's email, Pulliam stated that if the employees did not stop littering their butts around the outside the building he would prohibit smoking completely *except in employees' personal*

21

*vehicles*. Here, Brandon was smoking in his own car and littering the cigarette butts next to his car. Brandon was not littering next to the Postal Presort building.

Thus, Brandon did not explicitly violate Pulliam's request. It is also worth noting that Pulliam's email never stated that littering cigarette butts could result in discipline or discharge. As a result, the Board did not err in determining that the cigarette butt incident did not constitute misconduct because under K.S.A. 2014 Supp. 44-706(b) no Postal Presort policy prohibited Brandon's conduct.

Finally, the record on appeal clearly shows that Brandon's actions during the cigarette butt incident did not constitute misconduct under K.S.A. 2014 Supp. 44-706(b) because littering was wholly unrelated to his job as an IT print clerk. For an employee to be disqualified from receiving unemployment benefits under K.S.A. 2014 Supp. 44-706(b), the misconduct must have been connected to the individual's work. Additionally, the misconduct must have constituted "'a violation of a duty or obligation reasonably owed the employer as a condition of employment.'" *Transam Trucking, Inc. v. Kansas Dept. of Human Resources*, 30 Kan. App. 2d 1117, 1122, 54 P.3d 527 (2002) (quoting K.S.A. 2001 Supp. 44-706[b][(1]). Regarding alleged misconduct that occurred in an employee's private life, our Supreme Court has previously held:

An employee's conduct off the working premises and outside the course or scope of his employment is generally not considered misconduct in connection with employment. There are circumstances where the conduct is so closely connected with the business interests of the employer as to warrant disqualification for unemployment benefits. . . . There is no merit to the argument that an act of misconduct relating to the private life of an employee is connected with his employment. The fundamental issue is whether the misconduct adversely affected the employee's ability and capacity to perform his duties. *National Gypsum Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 686, 772 P.2d 786 (1989).

In this case, Brandon's act of littering his cigarette butts on the ground outside his driver's side door was unconnected to his work as an IT print clerk. Clearly, Brandon's smoking and littering habit had nothing to do with his job.

Moreover, Brandon was not working when he littered the cigarette butts. Brandon littered the cigarette butts during his lunch break. In fact, it is unclear from the parties' arguments whether Brandon littered the cigarette butts in a private parking lot owned by Postal Presort or in a public parking space owned by the City of Wichita. Under the standard dictated by our Supreme Court when an employee has allegedly committed misconduct while not at work, Brandon's action of littering cigarette butts cannot constitute misconduct. Nothing in the record on appeal indicates that Brandon's littering was closely connected to his job or adversely affected his ability and capacity to perform his job. Most importantly, in its brief, Postal Presort never argues that Brandon's littering was connected to his job or adversely affected his ability to perform his job. Postal Presort's only argument is that Brandon committed misconduct because Brandon violated its well-known policy on littering cigarette butts. Thus, the Board did not err by determining that the cigarette butt incident did not constitute misconduct under K.S.A. 2014 Supp. 44-706(b) as the incident was completely unconnected to Brandon's duties as an IT print clerk.

For the foregoing reasons, the Board correctly adopted the referee's decision that Brandon was terminated but not for misconduct under K.S.A. 2014 Supp. 44-706(b)(1). Accordingly, the trial court properly affirmed the Board's decision.

Affirmed.